Brent O. Roche (ISB#: 2627)
Nathan R. Palmer (ISB#: 9336)
RACINE OLSON, PLLP
P. O. Box 1391
Pocatello, Idaho 83204-1391
Telephone: (208) 232-6101
Fax: (208) 232-6109
brent@racineolson.com
nathan@racineolson.com

*Attorneys for Defendant Cloud Peak Law Group, P.C.*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMY EVANS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES HEPWORTH, an individual; MICHELA SWARTHOUT, an individual; SWARTHEP, LLC, a Wyoming limited liability company; HZ GLOBAL, LLC, a Wyoming limited liability company; LUXE IMPORTS, LLC, an Idaho limited liability company; LUXE IMPORTS, LLC, a Montana limited liability company; WANTHUB, INC., a Delaware corporation; TREASURE VALLEY POWDER COATING, LLC, an Idaho limited liability company; MCWORTH PROPERTIES, LLC, a Wyoming limited liability company; YUANCELA, LLC, a Wyoming limited liability company; CLOUD PEAK LAW GROUP, P.C., a Wyoming professional corporation; and DOES 1-10,<br><br>Defendants. | Case No. 19-00380 (REB)<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT CLOUD PEAK LAW GROUP, P.C.'S MOTION TO DISMISS** |

Defendant Cloud Peak Law Group, P.C. ("Cloud Peak"), through counsel, hereby submits its memorandum in support of its Motion to Dismiss.

## I. PLAINTIFF'S CLAIMS

As set out in the Verified Complaint & Demand for Jury Trial ("Complaint"), Plaintiff Amy Evans claims arise from her ex-husband, Defendant James Hepworth, failing to abide by the terms of the divorce judgment entered on October 29, 2015. More particularly, Mr. Hepworth failed to promptly notify her when he received nearly $1,800,000 from the sale of stock shares that Ms. Evans had a one-half ownership interest in. Such occurred on or about November 3, 2017. Complaint, ¶¶ 18-33.

Ms. Evans further alleged that instead of Mr. Hepworth paying her rightful one-half of the proceeds from the sale of the shares, he, in concert with Michela Swarthout, his girlfriend/fiancé, and a myriad of other companies, most of which were LLC's created by them, began a pattern of deception, transfers and spending in order to hide his receipt and use of the proceeds. *Id.* ¶ ¶ 30, 34.

Ms. Evans did not learn of the sale of the stock proceeds and Mr. Hepworth's receipt of the nearly $1,800,000 until April 2019. By that time, Mr. Hepworth had nearly exhausted the stock sale proceeds through a myriad of transfers and other lavish spending. *Id.* ¶ 36.

Defendants include Mr. Hepworth, Ms. Swarthout, along with seven LLC's, one corporation and one professional corporation. The LLC's include four Wyoming LLC's: Swarthep, LLC, HZ Global, LLC, McWorth Properties, LLC and Yuancela, LLC. Two Idaho LLC's were named as defendants: Luxe Imports, LLC, and Treasure Valley Powder Coating, LLC. The seventh LLC named as a defendant was a Montana LLC, Luxe Imports, LLC. The

corporate defendant is Wanthub, Inc., a Delaware corporation. The last named defendant is a Wyoming professional corporation, Cloud Peak Law Group, P.C. Complaint, ¶¶ 2-12.

Plaintiff alleged that Mr. Hepworth and/or Ms. Swarthout are the only persons with control over the bank accounts and other assets held by Swarthep, HZ Global, Idaho Luxe, Montana Luxe, TV Power Coating and McWorth Properties. She further alleged that Ms. Swarthout, along with non-party, Brandon Zehm, controls the bank accounts and other assets of Yuancela. *Id.* at ¶ 14.

Plaintiff further asserted that after learning of Mr. Hepworth's receipt of the stock share proceeds in April 2019, she filed a petition to enforce judgment of divorce in the divorce case. Almost immediately thereafter, Mr. Hepworth and Ms. Swarthout fled the state of Idaho and continue to live at an undisclosed location outside the state. *Id.* ¶¶ 67-68.

In paragraphs 37-71 of the Complaint, Plaintiff described a several transfers of money by Mr. Hepworth, Ms. Swarthout and the LLC's starting soon after Mr. Hepworth's receipt of the stock proceeds in early November 2017 and continuing through the July 2019. None were made to or from Cloud Peak.

Regarding damages, Plaintiff has recovered or expects to recover about $600,000 of her one-half of the stock proceeds. She asserts that in excess of $300,000 remains unpaid with no real likelihood of her collecting it from Mr. Hepworth individually. *Id.* at ¶ 73. Claiming that Mr. Hepworth and Ms. Swarthout, and the other defendants, were improperly and unlawfully enriched by the actions of Mr. Hepworth and Ms. Swarthout, Plaintiff asserts that she is entitled to restitution and disgorgement in an amount equal to the amounts the Defendants received in connection with the scheme described in her Complaint. *Id.* ¶¶ 75-77.

The only allegations contained in the "Factual Allegations" section of her Complaint directly involving Cloud Peak are those in Paragraph 35 which states as follows:

Nearly all of the deception, transfers and spending were done with the knowledge, advice and assistance of Defendant Cloud Peak, which advertises itself as a law firm specializing in hiding assets from "creditors, bad luck, poor decisions, bankruptcy and divorce." Further, Cloud Peak acts as registered agent for many of the remaining entity Defendants.

Plaintiff's Complaint includes five counts: I – violation of Idaho's Uniform Voidable Transaction Act, Complaint, ¶¶ 79-86; II – Conversion, *Id.* ¶¶ 87-91; III – Conspiracy, *Id.* ¶¶ 92-95; IV – violations of U.S. Racketeer Influenced and Corrupt Organization Act, *Id.* ¶¶ 96-113; and V – violations of Idaho Racketeering Act, *Id.* ¶¶ 114-121.

## II. RELEVANT FACTS

As explained in Mark Pierce's affidavit, Cloud Peak is a professional corporation organized under the laws of Wyoming, with its principal place of business located in Sheridan, Wyoming. Pierce Aff ¶ 3.

Cloud Peak is a law firm and Mr. Pierce is the law firm's only attorney. *Id.* ¶ 4. Cloud Peak has never had any offices in Idaho and never employed any residents of Idaho. Mr. Pierce has never been licensed to practice law in Idaho and his firm has never been registered to do business in Idaho. *Id.* ¶ 5.

Cloud Peak does a substantial amount of its work for clients through its website. The firm's website is not directed towards Idaho or any other state. The firm has never specifically targeted potential clients from Idaho by running television, radio or internet advertisements in Idaho or by sending print advertisements to residents in Idaho. *Id.* ¶ 7.

Mr. Pierce further explained that his law firm previously represented James Hepworth and Michela Swarthout. Such representation included forming the four Wyoming LLC's named as defendants in Plaintiff's Complaint. As accurately shown in the public records accessible on the

Wyoming Secretary of State's website, Cloud Peak organized Swarthep, LLC on October 31, 2017; HZ Global, LLC on November 22, 2017; Yuancela, LLC on March 13, 2018 and McWorth Properties, LLC on June 22, 2018. As also revealed on the public records included on the Wyoming Secretary of State's website, Cloud Peak has served as each entity's registered agent since its date of formation. *Id.* at ¶ 8.

Cloud Peak had no involvement in forming any of the other limited liability companies named as defendants in this case. Likewise, it has not served as registered agent for any of the other limited liability companies named as defendants. *Id.* at ¶ 9.

Mr. Pierce also explained that prior to Cloud Peak being served with the Summons and Complaint in this matter on October 8, 2019, he had no knowledge about the terms of Amy Evans' divorce from James Hepworth, Mr. Hepworth's receipt of proceeds from the sale of C&D shares of Redtop Holdings Limited, or Ms. Evans' claim of entitlement to one-half of those proceeds. *Id.* at ¶ 10. Furthermore, Mr. Pierce stated that at no time during his law firm's representation of James Hepworth and Michela Swarthout did he provide legal advice that was intended to prevent or delay Amy Evans from recovering her rightful share of the proceeds from the sale of shares of Redtop Holdings Limited. *Id.* at ¶ 11. Mr. Pierce further asserted that his law firm had no role in the transfers described in Plaintiff's Complaint in Paragraphs 37 through 78. *Id.* Finally, Mr. Pierce explained that none of the "deception, transfers and spending" described in Plaintiff's Verified Complaint were done with his knowledge. He did not advise Mr. Hepworth or Ms. Swarthout to engage in any deceptions, to make any transfers or to spend any money as described in Plaintiff's Complaint. *Id.* at ¶ 13.

## III. ARGUMENT

### A. The Court Does Not Have Personal Jurisdiction Over Cloud Peak

#### 1. Motion to Dismiss Standard

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The defendant's motion may be supported by affidavits and other evidence. If supported by affidavits or other evidence, the plaintiff may not stand on her pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. The Court looks to the pleadings and affidavits to determine whether the plaintiff has made a prima facie showing of personal jurisdiction. *Id.*

#### 2. Personal Jurisdiction

The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154-55 (9th Cir. 2006).

For an Idaho court to exert jurisdiction over an out-of-state defendant, two criteria must be met; the act giving rise to the cause of action must fall within the scope of I.C. § 5-514 and the constitutional standards of due process must be met. The Idaho Supreme Court has concluded that personal jurisdiction was lacking in a given case under each part of this test. In two cases the Court held that while the defendant's conduct fell within the long-arm statute, jurisdiction could not be exercised consistently with the Due Process Clause. *Smalley v. Kaiser,* 130 Idaho 909, 950 P.2d 1248 (1997) and *Saint Alphonsus Regional Medical Ctr. v. State of Washington.,* 123 Idaho 739, 852 P.2d 491, 494 (1992).

Significantly, the Court found the first criteria lacking in its recent decision in *Dickinson Frozen Foods, Inc. v. J.R. Simplot Co.,* 164 Idaho 669, 678, 434 P.3d 1275, 1284 (2019). The Court held that Idaho did not have personal jurisdiction over two out-of-state law firms because the law firms had not committed a tort within Idaho so as to satisfy the requirements of the tort prong of Idaho's long-arm statute, I.C. § 5-514(b). The Court emphasized that the only acts committed by the law firms were filing a complaint in a Washington court and sending that complaint to a lender of the plaintiff. Both acts occurred in Washington. The Court, citing its earlier decision in *Gailey v. Whiting*, 157 Idaho 727, 339 P.3d 1131 (2014), rejected plaintiff's argument that personal jurisdiction over the out-of-state law firms existed in Idaho under the tort prong of its long-arm statute because the effects of the alleged libel and slander were felt by the plaintiff in Idaho. Whether the "effects" of the tort were felt in Idaho was more akin to the due process prong of personal jurisdiction, rather than in the analysis of Idaho's long-arm statute. *Id.* 164 Idaho at 678, 434 P.3d at 1284.

Due process requires that a non-resident defendant have sufficient minimum contacts with the forum state, such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. The constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established minimum contacts in the forum State. Jurisdiction is proper where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State. *Hill v. Union Pacific Railroad Co.,* 362 F. Supp. 3d 890, 885 (D. Idaho 2019)

Personal jurisdiction can be general or specific. A court may assert general personal jurisdiction over a foreign corporation when its affiliations with the state are so continuous and systematic as to render it essentially at home in the forum state. In contrast, specific personal

jurisdiction is exercised when a state asserts personal jurisdiction over a defendant in a lawsuit arising out of, or related to, the defendant's contacts with the forum state. Specific jurisdiction depends on the quality and nature of a defendant's contacts with the forum state in relation to the cause of action. *Id.*

General jurisdiction over a corporation, such as Cloud Peak, is generally limited to a forum which is a corporation's place of incorporation or its principal place of business. *BNSF Ry. Co. v. Tyrrell,* 137 S.Ct. 1549, 1558, 198 L.Ed.2d 36 (2017). Only in an "exceptional case" can a court exercise general jurisdiction in a forum that is not the "corporation's place of incorporation [or] its principal place of business." *Id.* An example of an exceptional case is when war forces a "corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio," which becomes the "center of the corporation's wartime activities." *Id.* (quoting *Perkins v. Benquet Consol Mining Co.*, 342 U.S. 437, 448 (1952)).

The Ninth Circuit has established a three-prong test to determine whether a court may exercise specific personal jurisdiction over a non-resident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or results from the defendant's forum-related activity; and
>
> (3) exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Hill* at 896.

The first prong of the specific jurisdiction test is satisfied when the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into

court there. *Id.* In determining whether the first prong has been met, the Ninth Circuit distinguishes between cases arising out of tort and those arising out of contract. While a purposeful direction analysis is used in tort cases, a purposeful availment analysis is used in contract cases. A showing that a defendant purposefully directed his conduct toward a forum state usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as distribution in the forum state of goods originating elsewhere. *Id.*

Judge Lodge, in *Omega RV v. RV Factory, LLC,* 2017 WL 1943952, *4 (D. Idaho 2017), noted that the Ninth Circuit evaluates purposeful direction under the three-part *Calder* "effects" test, which "requires that the defendant allegedly had (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." The requisite intent refers to an intent to perform an actual, physical act in the real world, rather than the intent to accomplish a result or consequence of that act.

The second prong, relatedness, requires application of a "but for" test. A single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state. *Hill* at 896-897.

If a plaintiff satisfies the first two prongs of the test for specific personal jurisdiction, then the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable. *Id.* at 899. To determine the reasonableness of exercising jurisdiction over a defendant, the court considers the following seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id.*

Judge Lodge, in *Omega RV,* rejected the plaintiff's argument that the Indiana defendants' interactive website, together with their sending a cease and desist letter, were sufficient to show that defendants purposely directed activity to Idaho. Id. at ** 5-6. He further found that plaintiff's claims against defendants did not arise out of their forum activity. More specifically, the only forum related activity was the cease and desist letter which was not the "but for" cause of plaintiff's claim that its intellectual property rights were infringed upon by defendants. *Id.* at *6. Judge Lodge also concluded that even if there were sufficient minimum contacts for the court to exercise personal jurisdiction over defendants from Indiana, such exercise would be unreasonable. *Id.*

In this case, general jurisdiction over Cloud Peak does not exist as Cloud Peak was not formed under Idaho's laws, Idaho is not its principal place of business and no exceptional circumstances exist. Likewise, specific jurisdiction over Cloud Peak may not be exercised. Cloud Peak, like the defendant out-of-state law firms involved in *Dickinson Frozen Foods,* did not perform any acts in Idaho. Moreover, its website, like the defendants' in *Omega RV,* is not directed at Idaho. Accordingly, Cloud Peak had no reason to anticipate being haled into court in Idaho.

### 3. Impact of Federal RICO Statute

Cloud Peak acknowledges that the federal RICO statute authorizes nationwide service and the exercise of jurisdiction over a defendant present anywhere in the United States in certain instances when it is shown that "the ends of justice" require it. In order to take advantage of this provision, a plaintiff must demonstrate that the forum court has personal jurisdiction over at least one defendant based on his minimum contacts and that there is no other district in the United States that would have personal jurisdiction over all of the alleged co-conspirators. *Barantsevich v. VTB*

*Bank,* 954 F.Supp.2d 972, 989 (D.C.D. California 2013). For this to be utilized, however, the asserted federal claim must not be wholly immaterial or insubstantial. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 942 (11th Cir. 1997).

If a court has personal jurisdiction under the federal RICO statute, then the pendent personal jurisdiction doctrine comes into play and the court may exercise personal jurisdiction over defendants with respect to the state-law claims without engaging in the traditional personal jurisdiction analysis. *Action Embroidery Corp. v. Atl. Embroidery, Inc.,* 368 F.3d 1174, 1180-81 (9th Cir. 2004).

Critically, however, Plaintiff's RICO claims must survive a 12(b)(6) analysis if they are to serve as the basis for the Court's personal jurisdiction over Plaintiff's remaining state law claims. *Leon v Continental AG,* 301 F.Supp.3d 1203, 1232 (D.S.D. Florida 2017). As demonstrated below, Plaintiff's RICO claims do not.

**B.     Plaintiff Has Failed To State A Claim Against Cloud Peak Under RICO For Which Relief May Be Granted**

Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the plaintiff's claim for relief. The relevant inquiry is whether the plaintiff's allegations are sufficient under Federal Rule of Civil Procedure 8(a), which sets forth the minimum pleading requirement, i.e., has the plaintiff provided a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007).

When reviewing the motion to dismiss, the Court must accept as true all non-conclusory, factual (not legal) allegations made in the Complaint. *Ashcroft v. Iqbal,* 156 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009), and draw all reasonable inferences in favor of the non-moving party, *Mohamed v. Jeppesen Dataplan, Inc.,* 579 F.3d 943, 949 (9th Cir. 2009).

"While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. A complaint must contain sufficient factual allegations to provide plausible grounds for entitlement to relief. *Twombly*, 550 U.S. at 555-56, 127 S.Ct. 1955.

Plaintiff's federal RICO claim alleges that the Enterprise Defendants, which consist of all defendants except Wanthub, Inc., engaged in a pattern of racketeering activity involving wire fraud and mail fraud to advance a scheme to defraud Plaintiff of her rightful funds. Complaint, ¶¶ 98-101. She specifically alleged violations of 18 U.S.C. § 1962(a) and (c) and a conspiracy under (d).

As explained by the Court in *Baker v. Patterson,* 2017 WL 2903340, *5 (D. Idaho 2017), Section 1962(a) provides it is unlawful "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... in which such person has participated as a principal ... to use or invest ... any part of such income ... in ... operation of ... any enterprise." Section 1962(c) prohibits a person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise through a pattern of racketeering activity. Thus, both of these alleged RICO substantive offenses require pleading and proof that the defendant engaged in a "pattern of racketeering activity." A person cannot have engaged in a pattern of predicate racketeering activity without knowledge of the conduct that makes the predicate acts illegal.

The *Baker* Court held that Plaintiffs failed to plead any plausible factual basis for the Petersen Defendants' knowledge of and joinder in Dr. Patterson's predicate acts so as to profit from the fraudulent sale of non-FDA approved products. The Court characterized this failure as

a fatal flaw to the RICO claims against the Petersen Defendants, making them subject to dismissal. *Id.* at ** 5-6.

The *Baker* Court also noted that the allegations of wire and mail fraud as predicate acts under RICO must satisfy the heightened pleading standards of Rule 9(b). Noting that Plaintiffs' amended pleading contained no additional factual allegations, let alone ones with the requisite degree of particularity, of any misrepresentations or knowing participation in any misrepresentations by the Petersen Defendants or any allegations that any fraudulent communications were by wire or mail or how and when there was any specific use of the wires or the mails in furtherance of the alleged fraud, the Court held that Plaintiffs' substantive RICO claims must be dismissed for failure to plead them adequately, pursuant to Rules 8, 9(b), and 12(b)(6). *Id.* at *6.

The *Baker* Court next turned to Plaintiffs' RICO conspiracy claim under Section 1962(d). Citing the Ninth Circuit's decision in *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015), the Court noted that for a plaintiff to establish RICO conspiracy claims against a given defendant, the defendant must be aware of the essential nature and scope of the enterprise and intend to participate in it. This rule is designed to avoid an unjust association of the defendant with the crimes of others. Applying this rule to the allegations in Plaintiffs' amended complaint, the *Baker* Court held there was a lack of any allegations plausibly suggesting that the Petersen Defendants were aware of the essential nature and criminal purpose of the enterprise consisting of just Dr. Patterson, Patterson, P.A., or both Patterson Defendants, or intended to participate or commit any predicate fraud offenses. Therefore, the Court ruled that the RICO conspiracy claim must also be dismissed for failure to state a claim upon which relief can be granted. *Id.* at ** 7-8.

Here Plaintiff's federal RICO claims suffer from the same deficiencies as those in *Baker*. She has offered no specific factual assertions to support her claim that any, let alone nearly all, of the deception, transfers and spending outlined in her Complaint were done with the knowledge, advice and assistance of Cloud Peak. Those are properly deemed conclusory allegations. Plaintiff has not asserted any facts showing that Cloud Peak was aware of Mr. Hepworth's divorce terms or his sale of the stock shares. Moreover, she has failed to provide any specifics showing that Cloud Peak was aware of any plan to deprive Plaintiff of her rightful share of the stock proceeds, that Cloud Peak agreed with the objective of the alleged conspiracy or that Cloud Peak engaged in any wire or mail fraud or a pattern of racketeering activity. In this regard, Plaintiff has not alleged any particular facts supporting her conclusory allegations that Cloud Peak provided advice to Mr. Hepworth and Ms. Swarthout on how to prevent or delay Plaintiff from receiving her rightful share of the proceeds. Plaintiff's allegations amount to no more that an unjust association of Cloud Peak with the alleged crimes of Mr. Hepworth and Ms. Swarthout.

Additionally, there is nothing actionable about a law firm helping clients form LLCs or serving as the LLC's registered agents. It is done regularly. What a given client choses to do with the entity after its formation is beyond the control of the law firm.

Based on the foregoing, Cloud Peak respectfully urges the Court to dismiss Plaintiff's Count IV RICO claim against Cloud Peak. Without a surviving RICO claim on which to base pendent personal jurisdiction, the Court cannot consider Plaintiff's remaining state law claims.

  **C.** **Plaintiff Also Has Failed To State A Claim Against Cloud Peak Under Her State Law Claims For Which Relief May Be Granted**

In the event that the Court denies Cloud Peak's motion to dismiss for lack of personal jurisdiction, then Cloud Peak asserts that Plaintiff has failed to properly plead any of her four state

law claims asserted against Cloud Peak. Cloud Peak incorporates by reference the points and authorities set out in the previous part of this memorandum not limited to federal RICO claims.

As previously explained, Plaintiff has offered no facts to support any of the conclusory allegations set out in Paragraph 35 of her Complaint. Likewise, she has lumped together Cloud Peak with the other Defendants in each of Counts I, II, III and V. No specific misconduct attributed to Cloud Peak is contained in the state law counts. Plaintiff has not identified one fraudulent transfer that Cloud Peak participated in. Likewise, she has offered no facts to support her claim that Cloud Peak converted any of her share of the stock proceeds; that Cloud Peak conspired with any of the other defendants to convert her property or hide her share of the stock proceeds so as to prevent Mr. Hepworth paying the same to Plaintiff. Finally, Plaintiff's state RICO claims were not supported with any facts to satisfy the heightened pleading requirements of Fed. R. Civil P. 9(b).

Plaintiff's allegations in Paragraph 35 that "nearly all of the deception, transfers and spending were done with the knowledge, advice and assistance of Defendant Cloud Peak" are properly characterized as conclusory and/or legal conclusions, which have not been adequately supported by sufficient factual allegations to provide plausible grounds for entitlement to relief. Plaintiff has not met her obligation to provide factual grounds for her claim of entitlement to relief against Cloud Peak. Instead, she has improperly relied upon labels and conclusions and formulaic recitation of the elements of her various causes of action which are not adequate under *Twombly* and *Iqbal*.

## IV. CONCLUSION

Defendant Cloud Peak Law Group, P.C. respectfully requests that this Court grant its motion to dismiss on the basis of lack of personal jurisdiction and/or failure to state a claim upon which relief may be granted.

DATED this 29th day of October, 2019.

                                                   RACINE OLSON, PLLP

                                       By:   /s/  Brent O. Roche
                                                    BRENT O. ROCHE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of October, 2019, I filed the foregoing electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Matthew T. Christensen
Branden M. Huckstep
ANGSTMAN JOHNSON
199 N. Capital Blvd., Suite 200
Boise, Idaho 83702
mtc@angstman.com
bmh@angstman.com

                                                    /s/  Brent O. Roche
                                                    BRENT O. ROCHE

MEMORANDUM IN SUPPORT OF DEFENDANT CLOUD PEAK LAW GROUP, P.C.'S
MOTION TO DISMISS– PAGE 16