Kevin E. Dinius
Sarah Hallock-Jayne
DINIUS LAW
5680 E. Franklin Rd., Suite 130
Nampa, Idaho 83687
Telephone:      (208) 475-0100
Facsimile:      (208) 475-0101
ISB Nos.        5974, 5745
*kdinius@diniuslaw.com*
*shallockjayne@diniuslaw.com*
Attorneys for Defendants Michela Swarthout, Swarthep, LLC, HZ Global, LLC, Luxe Imports,
LLC (ID), Luxe Imports, LLC (MT) and McWorth Properties, LLC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| AMY EVANS, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO.  1:19-cv-00380-DCN** |
| | ) | |
| -vs- | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **DEFENDANTS' MOTION TO** |
| JAMES HEPWORTH, an individual; | ) | **DISMISS** |
| MICHELA SWARTHOUT, an individual; | ) | |
| SWARTHEP, LLC, a Wyoming limited | ) | |
| liability company; HZ GLOBAL, LLC, a | ) | |
| Wyoming limited liability company; LUXE | ) | |
| IMPORTS, LLC, an Idaho limited liability | ) | |
| company; LUXE IMPORTS, LLC, a Montana | ) | |
| limited liability company; WANTHUB, INC., | ) | |
| a Delaware corporation; TREASURE | ) | |
| VALLEY POWDER COATING, LLC, an | ) | |
| Idaho limited liability company; MCWORTH | ) | |
| PROPERTIES, LLC, a Wyoming limited | ) | |
| liability company; YUANCELA, LLC, a | ) | |
| Wyoming limited liability company; CLOUD | ) | |
| PEAK LAW GROUP, P.C., a Wyoming | ) | |
| professional corporation; and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COME NOW Defendants Michela Swarthout, Swarthep, LLC, HZ Global, LLC, Luxe Imports, LLC (ID), Luxe Imports, LLC (MT) and McWorth Properties, LLC ("Defendants" or "these Defendants"), by and through their counsel of record, the law firm Dinius Law, and submit this Memorandum in Support of Defendants' Motion to Dismiss.

## I.     PLAINTIFF'S CLAIMS

As set forth in her Verified Complaint and Demand for Jury Trial, Plaintiff claims arise from her ex-husband, Defendant James Hepworth, allegedly failing to abide by the terms of the Divorce Judgment entered on October 29, 2015. Plaintiff alleges Mr. Hepworth failed to notify her when he received $1,795,666.10 from the sale of stock shares in which Plaintiff had a one-half ownership interest. Said funds were deposited into Mr. Hepworth's Keybank account ending in 5342. Complaint, ¶¶ 18-33.

Plaintiff further alleged that instead of Mr. Hepworth paying her rightful one-half of the proceeds from the sale of the shares, he, in concert with Michela Swarthout, his girlfriend/fiancé, and a myriad of other companies, most of which were LLC's allegedly created by them, began a pattern of deception, transfers and spending in order to hide his receipt and use of the proceeds. *Id*. ¶¶ 30, 34.

Plaintiff alleged she did not learn of the sale of the stock proceeds and Mr. Hepworth's receipt of the stock sale proceeds until April 2019 after Mr. Hepworth had nearly exhausted the stock sale proceeds through a myriad of transfers and other lavish spending. *Id*., ¶ 36.

Defendants include Mr. Hepworth, Ms. Swarthout, along with seven LLC's, one corporation and one professional corporation. The LLC's include four Wyoming LLC's: Swarthep, LLC, HZ Global. LLC, McWorth Properties, LLC and Yuancela, LLC. Two Idaho LLC's were named as defendants: Luxe Imports, LLC, and Treasure Valley Powder Coating,

LLC. The seventh LLC named as a defendant was a Montana LLC, Luxe Imports, LLC. The corporate defendant is Wanthub, Inc., a Delaware corporation. The last named defendant is a Wyoming professional corporation, Cloud Peak Law Group, P.C. *Id.*, ¶¶ 2-12.

Plaintiff alleged that Mr. Hepworth and/or Ms. Swarthout are the only persons with control over the bank accounts and other assets held by Swarthep, HZ Global, Idaho Luxe, Montana Luxe, TV Power Coating and McWorth Properties. She further alleged that Ms. Swarthout, along with non-party, Brandon Zehm, controls the bank accounts and other assets of Yuancela. *Id.*, ¶ 14.

Plaintiff further asserted that after learning of Mr. Hepworth's receipt of the stock share proceeds in April 2019, she filed a petition to enforce judgment of divorce in the divorce case. Plaintiff alleged almost immediately thereafter, Mr. Hepworth and Ms. Swarthout "fled" the state of Idaho and continue to live at an undisclosed location outside the state. *Id.*, ¶¶ 67-68.

In paragraphs 37-71 of the Complaint, Plaintiff described a several transfers of money by Mr. Hepworth, Ms. Swarthout and the LLC's starting soon after Mr. Hepworth's receipt of the stock proceeds in early November 2017 and continuing through the July 2019.

Regarding damages, Plaintiff has recovered or expects to recover about $600,000 of her one-half of the stock proceeds. She asserts that in excess of $300,000 remains unpaid with no real likelihood of her collecting it from Mr. Hepworth individually. *Id.*, ¶ 73. Claiming that Mr. Hepworth and Ms. Swarthout, and the other defendants, were improperly and unlawfully enriched by the actions of Mr. Hepworth and Ms. Swarthout, Plaintiff asserts that she is entitled to restitution and disgorgement in an amount equal to the amounts the Defendants received in connection with the scheme described in her Complaint. *Id.*, ¶¶ 75-77.

Plaintiff's Complaint includes five counts: I — violation of Idaho's Uniform Voidable

Transaction Act, Complaint, ¶¶ 79-86; II — Conversion, *Id.,* ¶¶ 87-91; III — Conspiracy, *Id.,* ¶¶ 92-95; IV — violations of U.S. Racketeer Influenced and Corrupt Organization Act, *Id.,* ¶¶ 96-113; and, V — violations of Idaho Racketeering Act, *Id.,* ¶¶ 114-121.

## II.    RELEVANT FACTS

*Amy Hepworth v. James Hepworth,* **Ada County Case No. CV-DW-2015-5437.**

1.      Defendant Hepworth was previously married to Amy (Hepworth) Evans, the Plaintiff herein; the parties were divorced in Ada County Case No. CV-DW-2015-5437 on or about October 29, 2015.[1]

2.      The Divorce Judgment specifically awarded each party, one-half (½) of the C Ordinary Shares and one-half (½) of the D Purchase Shares in Redtop Holdings Limited.[2]

3.      Hepworth and Evans, in one way or another, have been and continue to be in a perpetual state of litigation since the decree was entered more than 4½ years prior.[3]

4.      Sometime in April, 2019, Evans discovered that Hepworth had, on or before November 1, 2017, liquidated all of the Redtop Holding Limited shares without notifying Evans he had done so.[4]

5.      Redtop Holdings deposited the Initial payment – One Million, Seven Hundred Ninety-five Thousand, Six Hundred Sixty-six dollars and ten cents ($1,795.666.10) into Hepworth's individual Keybank account (the "Keybank 5342 account").[5]

6.      On April 11, 2019, Plaintiff filed a Petition to Enforce Judgment related to Defendant Hepworth's receipt of stock share proceeds; this matter, among others remains

---

[1] *Verified Complaint & Demand for Jury Trial*, Dkt. 1, p. 4, ¶ 18.
[2] *Id.,*pp. 4-5, ¶¶ 19-23.
[3] *Declaration of Counsel*.
[4] *Verified Complaint & Demand for Jury Trial*, Dkt. 1, p. 5, ¶¶ 24-26.
[5] *Id*., p. 6, ¶¶ 31-33.

pending in Ada County Case No. CV-DW-2015-5437.[6]

7.    As part of the aforementioned litigation, Ms. Evans served *subpoenas duces tecum* to Keybank and Idaho Trust Bank.[7]

8.    On December 4, 2019, Evans filed an *Affidavit* and *Motion for Order for Debtor's Exam* in the divorce case.[8]

9.    According to the iCourt, Ada County Case No. CV-DW-2015-5437 is scheduled for a Court Trial on January 8, 2020.  The subject matter for the Court Trial is not clear from a review of the iCourt website.[9]

10.   In Ada County Case No. CV-DW-2015-5437, Plaintiff Evans obtained a money judgment against Hepworth for the amount of Redtop Holdings liquidation to which she was entitled pursuant to the Divorce Judgment.[10]

11.   Plaintiff Evans has been successful in already recovering a majority of the money judgment from Hepworth's bank accounts.[11]

**Swarthout and Entities.**

12.   Swarthep, LLC is solely owned by Michela Swarthout.  Swarthep, LLC is a Wyoming LLC formed on October 31, 2017 with its principal office located at 905 Broadway St STE 100 Sheridan, WY 82801.[12]

13.   James Hepworth is identified as the Sole Member of Swarthep, LLC in the notice of employee identification number from the Department of the Treasury Internal Revenue

---

[6] Declaration of Counsel, icourt website.
[7] *Id*.
[8] *Id*.
[9] *Id*.
[10] Dkt 1, p. 13, ¶ 72.
[11] *Id.*, ¶ 73.
[12] *Declaration of Michela Swarthout,* Exhibit A.

Service, dated October 31, 2017.[13]

14.   HZ Global, LLC is owned by Michela Swarthout and Brandon Zehm.  HZ Global, LLC is a Wyoming LLC formed on November 22, 2017 with its principal office located at 201 East 5th St STE 1200 Sheridan, WY 82801.[14]

15.   Luxe Imports, LLC ("Idaho Luxe") is solely owned by Michela Swarthout.[15]

16.   Luxe Imports, LLC ("Montana Luxe") is solely owned by Michela Swarthout.[16]

17.   Michela Swarthout owns percentage of in Wanthub, Inc.[17]

18.   Michela Swarthout does not own any interest in Treasure Valley Powder Coating, LLC.[18]

19.   Michela Swarthout does not own any interest in McWorth Properties, LLC.[19]

20.   Yuancela, LLC owns percentage of in Wanthub, Inc. Yuancela, LLC is a Wyoming LLC formed on March 13, 2018 with its principal office located at 201 East 5th St STE 1200 Sheridan, WY 82801.[20]

21.   Michela Swarthout, nor any of the entities named as defendants herein, were parties in the matter of *Hepworth v. Hepworth*, CV-DW-2015-05437. Neither Michela Swarthout nor the entities are bound by the terms or conditions of the Divorce Judgment.[21]

22.   Michela Swarthout did not engage in any deceptions to make any transfers or to spend any money as described in Plaintiff's Complaint.[22]

---

[13] *Id.*, Exhibit B.
[14] *Id.*, Exhibit C.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*, Exhibit D.
[21] *Id.*
[22] *Id.*

### III. ARGUMENT

**A.     Legal Standard.**

Under Rule 12(b)(6), the Court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." *See* Federal Rule of Civil Procedure 12(b)(6).  The relevant inquiry is whether the plaintiff's allegations are sufficient under Federal Rule of Civil Procedure 8(a), which sets forth the minimum pleading requirement, i.e., has the plaintiff provided a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007).

When reviewing the motion to dismiss, the Court must accept as true all non-conclusory, factual (not legal) allegations made in the Complaint. *Ashcroft v. Iqbal*, 156 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009), and draw all reasonable inferences in favor of the non-moving party, *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009).  "While a complaint attacked by Rule l2(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. A complaint must contain sufficient factual allegations to provide plausible grounds for entitlement to relief. *Twombly*, 550 U.S. at 555-56, 127 S.Ct. 1955.   The court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)), amended on other grounds by 275 F.3d 1187 (9th Cir. 2001).

**B.      The Court Does Not Have Personal Jurisdiction Over Swarthep, LLC, HZ Global, LLC or Yuancela, LLC.**

General jurisdiction over a corporation, such as Swarthep, LLC, HZ Global, LLC or Yuancela, LLC, is generally limited to a forum which is the corporation's place of incorporation or its principal place of business.  *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558, 198 L.Ed.2d 36 (2017).  Only in an "exceptional case" can a court exercise general jurisdiction in a forum that is not the "corporation's place of incorporation [or] its principal place of business."  Id.  An example of an exceptional case is when war forces a "corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio," which becomes the "center of the corporation's wartime activities." *Id*. (quoting *Perkins v. Benquet Consol Mining Co*., 342 U.S. 437, 448 (1952)).

In *BNSF Railway*, the Court denied the exercise of personal jurisdiction by a Montana court over a corporation that had active operations, thousands of workers, thousand miles of railroad track, and hundreds of millions of dollars of property in the state. *See id.* at 1554. The corporation, however, was neither incorporated in nor had its principal place of business in Montana. The Supreme Court held that courts must assess "a corporation's activities in their entirety" and that a corporation that operates in many jurisdictions, like BNSF, cannot be at home in all of them. The mere fact that a corporation has contacts with a foreign state will "not suffice to permit the assertion of general jurisdiction" over claims "unrelated to any activity occurring" there. *Id.* at 1559 (internal citation omitted). In other words, general "all purpose" jurisdiction over an out-of-state corporate defendant will no longer obtain simply because that corporation maintains a presence even a significant presence in the forum.

In this case, general jurisdiction over Swarthep, LLC, HZ Global, LLC or Yuancela, LLC does not exist because none of these limited liability companies were formed under Idaho's laws;

their principal offices/place of business are not in Idaho and exceptional circumstances do not exit to justify jurisdiction.

### C.   Plaintiff Has Failed To State A Claim Against These Defendants Under RICO For Which Relief May Be Granted.

Plaintiff's federal RICO claim alleges that the "Enterprise Defendants," which consist of all defendants except Wanthub. Inc., engaged in a pattern of racketeering activity involving wire fraud and mail fraud to advance a scheme to defraud Plaintiff of her rightful funds. Complaint, ¶¶ 98-101.  Plaintiff specifically alleged violations of 18 U.S.C. § 1962(a) and (c) and a conspiracy under (d).  In order to establish a civil RICO claim, a plaintiff must establish: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479,  496, (1985). "The failure to establish any of these elements is fatal to a RICO claim. *See Rae v. Union Bank,* 725 F.2d 478, 480-81 (9th Cir.1984) (affirming Rule 12(b) dismissal of RICO claim where plaintiff failed to meet the "enterprise" requirement)." *Streck v. Peters*, 855 F.Supp. 1156 at 1160 (D. Haw. 2994).

"Racketeering activity" is defined as a number of specific criminal acts under federal and state laws. See 18 U.S.C. § 1961(1). Here, Plaintiff bases her RICO claim on the predicate crimes of mail and wire fraud (18 U.S.C. §§ 1341, 1343).  The elements of mail and wire fraud consist of (1) a scheme or artifice devised with (2) the specific intent to defraud and (3) use of the United States mails or interstate wires in furtherance thereof. *Orr v. Bank of America*, *NT & SA*, 285 F.3d 764, 782 (9th Cir. 2002) (citation omitted).  Because Plaintiff's predicate crimes are based upon allegations of fraud, they must be pled with particularity. FED. R. CIV. P. 9(b); *Odom v. Microsoft Corp*., 486 F.3d 541, 553–54 (9th Cir. 2006).

"Liability under § 1962(c) requires (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th

Cir. 1987) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a crime." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986).

In *Baker v. Patterson*, 2017 WL 2903340, *5 (D. Idaho 2017), the Court explained that Section 1962(a) provides it is unlawful "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... in which such person has participated as a principal ... to use or invest ... any part of such income ... in ... operation of...any enterprise." Section 1962(c) prohibits a person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise through a pattern of racketeering activity. Thus, both of these alleged RICO substantive offenses require pleading and proof that the defendant engaged in a "pattern of racketeering activity." A person cannot have engaged in a pattern of predicate racketeering activity without knowledge of the conduct that makes the predicate acts illegal.

The *Baker* Court held that Plaintiffs failed to plead any plausible factual basis for the Petersen Defendants' knowledge of and joinder in Dr. Patterson's predicate acts so as to profit from the fraudulent sale of non-FDA approved products. The Court characterized this failure as a fatal flaw to the RICO claims against the Petersen Defendants, making them subject to dismissal. *Id*. at ** 5-6.

The *Baker* Court also noted that the allegations of wire and mail fraud as predicate acts under RICO must satisfy the heightened pleading standards of Rule 9(b). Noting that Plaintiffs' amended pleading contained no additional factual allegations, let alone ones with the requisite

degree of particularity, of any misrepresentations or knowing participation in any misrepresentations by the Petersen Defendants or any allegations that any fraudulent communications were by wire or mail or how and when there was any specific use of the wires or the mails in furtherance of the alleged fraud, the Court held that Plaintiffs' substantive RICO claims must he dismissed for failure to plead them adequately, pursuant to Rules 8, 9(b), and 12(b)(6). *Id*. at *6.

The *Baker* Court next turned to Plaintiffs' RICO conspiracy claim under Section 1 962(d). Citing the Ninth Circuit's decision in *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015), the Court noted that for a plaintiff to establish RICO conspiracy claims against a given defendant, the defendant must be aware of the essential nature and scope of the enterprise and intend to participate in it. This rule is designed to avoid an unjust association of the defendant with the crimes of others. Applying this rule to the allegations in Plaintiffs' amended complaint, the *Baker* Court held there was a lack of any allegations plausibly suggesting that the Petersen Defendants were aware of the essential nature and criminal purpose of the enterprise consisting of just Dr. Patterson, Patterson. P.A., or both Patterson Defendants, or intended to participate or commit any predicate fraud offenses. Therefore, the Court ruled that the RICO conspiracy claim must also be dismissed for failure to state a claim upon which relief can be granted. Id. at ** 7-8.

Here Plaintiff's federal RICO claims suffer from the same deficiencies as those in *Baker*. Plaintiff has offered no specific factual assertions to support her claim that any, let alone nearly all, of the deception, transfers and spending outlined in her Complaint were done with the knowledge, intent, advice and assistance of Ms. Swarthout and the entities she is associated with. Such assertions, without a factual basis therefor are properly deemed conclusory allegations.

Plaintiff has not asserted any facts showing that these Defendants were aware of Mr. Hepworth's divorce terms or his sale of the stock shares. Moreover, Plaintiff has failed to provide any specifics showing that these Defendants were aware of any plan to deprive Plaintiff of her rightful share of the stock proceeds, that these Defendants agreed with the objective of the alleged conspiracy or that these Defendants engaged in any wire or mail fraud or a pattern of racketeering activity. In this regard, Plaintiff has not alleged any particular facts supporting her conclusory allegations that these Defendants acted in any way to prevent or delay Plaintiff from receiving her rightful share of the proceeds. Plaintiff's allegations amount to nothing more than an unjust association of these Defendants with the alleged crimes of Mr. Hepworth.

Based on the foregoing, these Defendants respectfully urge the Court to dismiss Plaintiff's Count IV RICO claim against these Defendants.

### 1. Plaintiff Lacks Standing to Pursue RICO Claims As Against These Defendants.

> For a plaintiff to have standing to allege a violation of § 1962(c), the plaintiff must show '(1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was `by reason of' the RICO violation, which requires the plaintiff to establish proximate causation.' *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008). However, '[f]inancial loss alone . . . is insufficient' to allege an injury to property. *Id.* at 975. In addition, '[p]roximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged."' *Id.* at 891 (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).

*Summerfield v. Strategic Lending Corporation*, No. C09-02609 HRL, at *4 (N.D. Cal. Apr. 2, 2010).

Here, Plaintiff's RICO claim arises out of a domestic relations case between the Plaintiff and Defendant Hepworth. Plaintiff alleged that Defendants engaged in acts of mail fraud or wire fraud to conceal income derived from the liquidation of Redtop Holdings Limited shares as awarded in the Divorce Judgment in Ada County Case No. CV-DW-2015-5437, resulting in

damages and loss to Plaintiff for her share of proceeds.

In this instance, it is clear from Plaintiff's complaint that the alleged injury to property as asserted therein is related solely to a perceived financial loss. Not only is financial loss alone insufficient to establish a RICO claim, Plaintiff has a judgment in CV- DW-2015-5437…..for the amount owed pursuant to the divorce decree. With a judgment in hand, Plaintiff has not suffered an injury to a business or property.

### 2. The Alleged RICO Violations are Not the Proximate Cause of the Harm Alleged by Plaintiff.

In order for any plaintiff to have standing to recover under In order for any plaintiff to have standing to recover under § 1964(c), the alleged RICO violation must be the proximate cause of the plaintiffs' injuries. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *see also Anza v. Ideal Steel Supply Corp*., 547 U.S. 451, 457 (2006). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461. As the Supreme Court recently held, a defendant "cannot escape the proximate cause requirement merely by alleging that the fraudulent scheme embraced all those indirectly harmed by the alleged conduct. Otherwise our RICO proximate cause precedent would become a mere pleading rule." *Hemi Group, LLC v. City of New York*, 130 S. Ct. 989, 991 (2010). Confirming that the standards enunciated by *Anza* are still applicable, the Court went on to find that "[o]ur precedent makes clear, moreover, that 'the compensable injury flowing from a [RICO] violation . . .'necessarily is the harm caused by [the] predicate acts.'" *Id.* (citing *Anza*, 547 U.S. at 457 (quoting *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 497 (1985))). Thus any theory of causation that requires the court to move "well beyond the first step" to determine proximate cause is too indirect and "cannot meet RICO's direct relationship requirement." *Id.* at 989.

Furthermore, merely alleging that the purported predicate acts directly caused the harm to the Plaintiffs is insufficient because "that assertion is a legal conclusion about proximate cause." *Id*. at 992.  The Court concluded that although it "has interpreted RICO broadly," the Court has "also held that its reach is limited by the 'requirement of a direct causal connection' between the predicate wrong and the harm."  *Id*. at 994 (quoting *Anza*, 547 U.S. at 460).

The alleged mail and wire fraud described as the predicate acts in Plaintiff's verified complaint and the purported conclusory facts in support thereof were not the cause of Plaintiff's injury, if there has even been an injury.  Plaintiff has already received a money judgment against Hepworth in the amount she was entitled when the Redtop Holdings shares were sold.  These Defendants maintain Plaintiff has not suffered an injury, and even if she did, the predicate acts alleged by Plaintiff in furtherance of her RICO claims occurred *after* Hepworth deposited the proceeds of the sale of the shares into his individual Keybank account. The alleged predicate acts at issue herein, may have furthered, facilitated or concealed the apparent injury that occurred on or about November 1, 2017, but the acts did not cause the injury.

### D.  This Court Should Abstain from Exercising Jurisdiction Pursuant to Colorado and Burford Abstention Doctrines.

"Even when a federal question is presented, federal courts decline to hear disputes which would deeply involve them in domestic matters." *Thompson v. Thompson,* 798 F.2d 1547, 1558 (9th Cir. **\*52** 1986).  Traditionally, federal courts have abstained from exercising jurisdiction over domestic relation controversies, such as is the case herein. In *Gonzalez Canevero v. Rexach,* 793 F.2d 417 (1st Cir.1986), the ex-wife filed a diversity action against her ex-husband, alleging that she was a fifty (50%) percent shareholder in a corporation controlled by her former husband; that the corporation owned a piece of real estate, which she had requested an accounting regarding the affairs of the corporation with a view toward partitioning and

distributing her property, but that her ex-husband had refused her request. She sought money

damages equal to her half interest in the property or an order to partition the property.  The First

Circuit Court concluded:

> We have held, in discussing the exception, that 'federal courts should abstain
> from adjudicating claims that are closely related to, though not within, the
> jurisdictional exception.' *Sutter v. Pitts*, 639 F.2d 842, 843 (1st Cir.1981) We
> have also noted that 'it has been held that a federal court even where it has
> jurisdiction may abstain for reasons of comity and common sense from cases
> better handled by the state courts having authority over matrimonial and family
> matters.' *Armstrong v. Armstrong*, 508 F.2d 348, 350 (1st Cir.1974). Accord *Fern
> v. Turman*, 736 F.2d 1367 (9th Cir.1984) *cert. denied* [469 U.S. 1210] 105 S. Ct.
> 1177 [84 L. Ed. 2d 326] (1985); *Bossom v. Bossom*, 551 F.2d 474 (2d Cir.1976).
> Federal Courts have held that even though they will entertain jurisdiction when
> the plaintiff is able to characterize the action as one for damages caused by the
> spouse's tortious conduct, they will decline jurisdiction if the tortious conduct is
> part of an ongoing series of disputes centering around the marital
> relationship. *Jagiella v. Jagiella*, 647 F.2d 561 (5th Cir.1981); *Kilduff v.
> Kilduff*, 473 F. Supp. 873 (S.D.N.Y.1979); *Mauro v. Mauro*, 762 F. Supp.
> 173 (E.D.Mich.1991). In view of the above discussion, this Court would have
> abstained under the *Burford* abstention doctrine, if we had not resolved the
> controversy on the merits.

Similarly, in *Peterson v. Baumann*, Case No. 3:12-cv-01086-HA (D. Or. Sep. 30, 2012),

the aforementioned exception endabled a district court to decline jurisdiction where "the issues

involved are closely related to issues within the domestic relations exception and considerations

of comity and policy counsel against federal court intervention." *Fern v. Turman*, 736 F.2d 1367,

1370 (9th Cir. 1984) (citations omitted); see also *Elk Grove Unified Sch. Dist. v. Newdow*, 542

U.S. 1,13 (2004) (noting that the exception allows a district court to decline to hear a case

involving "elements of the domestic relationship" even when divorce, alimony, or child custody

is not strictly at issue); *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998) (holding

that a district court should decline jurisdiction when a suit consists of ancillary domestic relations

proceedings, such as a suit for the collection of unpaid alimony).  These Defendants contend that

this case qualifies for the domestic relations exception because Plaintiff seeks enforcement of the Divorce Judgment with respect to the division of parties' property involved in the state divorce case, as well as Defendant Hepworth's perceived violation of the Divorce Judgment.

This case is about former spouses continuing to battle over compliance with and enforcement of the Divorce Judgment entered more than four years ago.   It seems clear from the pleadings that the Plaintiff is not just interested in getting the funds she was entitled to upon the sale of the Redtop Holdings share; she's out for blood from her ex-husband and from anyone he is close to. Holding Hepworth to task under the Divorce Judgment is not Ms. Swarthout's battle to fight.

The dispute between Plaintiff and Hepworth is theirs alone and must be dealt with in the court currently holding jurisdiction to resolve such matters.  Ms. Swarthout was not a party to the divorce and bears no responsibility to Plaintiff for the satisfaction of the terms ordered therein. Further, Ms. Swarthout is not responsible to ensure or force Hepworth's compliance with the Divorce Judgment.  Plaintiff's attempt to circumvent the state court by filing a federal RICO action against Ms. Swarthout and her various entities appears to be nothing more than an attempt to pressure or otherwise coerce Ms. Swarthout into covering the debts and obligations owed Plaintiff by Hepworth.  The RICO Act was not created to be a mechanism by which to collect debts by extortion resulting from a highly contention, litigious divorce case.  It is incumbent upon the Plaintiff to execute on the judgment by methods provided for under state law, rather than pursuing a federal suit against individuals and entities engaged in business with her ex-husband.

"For plaintiffs seeking to score a tactical edge or to deal the heaviest possible vengeful blow to the defendant's personal reputation, shocking RICO accusations may serve to strengthen

their hand or induce sooner capitulation in any settlement discussions. The extraordinary costs associated with defending complex charges may also inflict added pain and provide defendants greater incentive to curtail RICO litigation." *Gross v. Waywell*, 628 F. Supp. 2d 475, 480 (S.D.N.Y. 2009).

### E.   Plaintiff Also Has Failed To State A Claim Against These Defendants Under Her State Law Claims For Which Relief May Be Granted.

Plaintiff has failed to properly plead any of her four state law claims asserted against these Defendants. As previously explained, Plaintiff has offered no facts to support any of the conclusory allegations set out in Paragraph 34 of her Complaint. Plaintiff alleges these Defendants acted in concert with Hepworth to hide and exhaust Hepworth's Redtop Holdings proceeds but has offered no facts to support her claims of conspiracy among the Defendants. Plaintiff's state RICO claims are not supported with any facts to satisfy the heightened pleading requirements of Fed. R. Civil P. 9(b). Plaintiff's allegations are properly characterized as conclusory and/or legal conclusions, which have not been adequately supported by sufficient factual allegations to provide plausible grounds for entitlement to relief. Plaintiff has not met her obligation to provide factual grounds for her claim of entitlement to relief against these Defendants. Instead, Plaintiff has improperly relied upon labels and conclusions and formulaic recitation of the elements of her various causes of action which are not adequate under *Twombly* and *Iqbal*.

## IV. CONCLUSION

Based on the foregoing, these Defendants respectfully request that this Court grant its motion to dismiss.

DATED this 6th day of December, 2019.

DINIUS LAW

*/s/ Sarah Hallock-Jayne*

By_____

Kevin E. Dinius

Sarah Hallock-Jayne

Attorneys for Defendants Michela Swarthout, Swarthep, LLC, HZ Global, LLC, Luxe Imports, LLC (ID), Luxe Imports, LLC (MT) and McWorth Properties, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of December, 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Matthew T. Christensen
Branden M. Huckstep
Attorneys for Plaintiff
*mtc@angstman.com*
*bmh@angstman.com*

Brent O. Roche
Nathan R. Palmer
Attorney for Defendant Cloud Peak Law Group, P.C.
*brent@racineolson.com*
*nathan@racineolson.com*

Matthew L. Waters
Thomas J. Lloyd, III
Attorneys for Defendant James Hepworth
*mlw@elamburke.com*
*tjl@elamburke.com*

*/s/ Sarah Hallock-Jayne*
_____
Sarah Hallock-Jayne

cm/T:\Clients\S\Swarthout, Michela 25779\Non-Discovery\Memorandum re Motion to Dismiss.docx

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 19