Matthew T. Christensen, ISB: 7213
Branden M. Huckstep, ISB: 10679
ANGSTMAN JOHNSON
199 N. Capitol Blvd., Ste 200
Boise, ID 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@angstman.com
bmh@angstman.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

AMY EVANS, an individual,

Plaintiff,

v.

JAMES HEPWORTH, an individual; MICHELA SWARTHOUT, an individual; SWARTHEP, LLC, a Wyoming limited liability company; HZ GLOBAL, LLC, a Wyoming limited liability company; LUXE IMPORTS, LLC, an Idaho limited liability company; LUXE IMPORTS, LLC, a Montana limited liability company; WANTHUB, INC., a Delaware corporation; TREASURE VALLEY POWDER COATING, LLC, an Idaho limited liability company; MCWORTH PROPERTIES, LLC, a Wyoming limited liability company; YUANCELA, LLC, a Wyoming limited liability company; and DOES 1-10.

Defendants.

Case No. 1:19-cv-00380-DCN

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SWARTHOUT DEFENDANTS' MOTION TO DISMISS

Amy Evans ("Plaintiff" or "Evans"), by and through her counsel of record ANGSTMAN JOHNSON respectfully submits this Memorandum in Opposition to Michela Swarthout's ("Swarthout"), Swarthep, LLC, HZ Global, LLC, Luxe Imports, LLC (ID), Luxe Imports, LLC, (MT) and McWorth Properties, LLC's (collectively "Swarthout Defendants") Motion to Dismiss the Complaint (the "Motion"). For the reasons set forth below, Evans requests that this Court deny the Motion to Dismiss in its entirety. Alternatively, in the event the Court is persuaded to dismiss the claims, Evans requests leave to amend the Complaint.

## I. INTRODUCTION

Among other things, Evans alleges in her Complaint:

- That the Swarthout Defendants engaged in a conspiracy and scheme of deception, transfers and spending with Defendant James Hepworth ("Hepworth");
- That this scheme involved the deception, transfer and spending of Evans' right to her share of the Redtop Holdings proceeds;
- That co-conspirators Hepworth and Swarthout created, own and control the myriad of companies that were formed to further perpetrate their scheme;
- The amounts, dates, and accounts of the transfers and spending between the various entities and LLC's used in the scheme;
- The actions taken by Swarthout et al., to further hide and defraud Evans of any amounts of the proceeds she is entitled to upon Evans becoming aware of the proceeds.

Under any reading of the applicable standards requiring particularity, Evans meets and exceeds her pleading obligations. Nevertheless, the Swarthout Defendants have moved to dismiss the Complaint, claiming that the Court does not have personal jurisdiction over several of the LLC Defendants; that Evans has failed to state a claim under RICO or her State Law claims upon which relief can be granted, including lack of standing and a proximate cause issue; and that the Court should abstain from exercising jurisdiction due to the "domestic relation" nature of the state case

between Hepworth and Evans. For the reasons set forth herein, Evans' claims are properly brought and adequately pled against the Swarthout Defendants and the Motion should be denied.

## II. ARGUMENT

### A. Legal Standards.

A motion to dismiss under Rule 12(b)(6) should be granted only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 335 U.S. 41, 48 (1957) (emphasis added); *see* also *Fed. R. Civ. P. 12(b)(6)*; *Bell Atlantic Corp v. Twombly*, 550 U.S. 540, 570 (2007) ("*Twombly*"). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature. *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). A complaint should never be dismissed because the court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. *Id*. The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("*Iqbal*").

The Ninth Circuit follows the methodological approach set forth in *Iqbal* for the assessment of a plaintiff's complaint: "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1950).

In cases such as this, F.R.C.P. 9(b) requires a more particular standard for certain allegations in a complaint, providing that: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Contrary to what is seemingly advocated in Swarthout's Motion to Dismiss, Rule 9(b) does not raise the pleading standard to the level required to survive a motion for summary judgment or to prevail at trial, requiring Evans to actually prove all material issues of her case; instead, Evans need only set forth the particular facts of the fraud, which at this stage must be accepted as true and all inferences given to Evans, to survive a motion for dismissal of the Complaint.

In the context of a motion to dismiss, references to facts or other items outside the scope of the Complaint (including attachments) is improper and can, in some instances, morph the Motion into a Motion for Summary Judgment.

**B. The Court has Personal Jurisdiction Over All Defendants including Swarthep, LLC, HZ Global, LLC and Yuancela, LLC.**

Swarthep, LLC, HZ Global, LLC and Yuancela, LLC all seek dismissal for lack of personal jurisdiction. At the pleading stage, Evans "need only make a prima facie showing of jurisdictional

facts." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)).

The federal RICO statute, 18 U.S.C. §§ 1961 to 1968, creates a private right of action with nationwide service[1] for damages against violators who engage in prohibited activities and permits such actions to "be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). As the Ninth Circuit has recognized, Congress intended RICO's broad reach "to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." *Butcher's Union*, 788 F.2d at 539. Under § 1964(c), RICO defendants are subject to federal question jurisdiction. In light of these provisions, due process requirements are satisfied if a defendant is served in the United States and the defendant's contacts with the United States as a whole, not with the forum, satisfy the "minimum contacts" test of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). This is sometimes described as a "national contacts" test. *See United Rope Distrib., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532 (7th Cir. 1991); *Herbstein v. Bruetman*, 768 F. Supp. 79 (S.D.N.Y. 1991). Because at least one of the Defendants is properly before this court, the RICO statute provides this court with personal jurisdiction over all other Defendants here.

Personal jurisdiction over Swarthep, HZ Global, and Yuancela is further proper under Federal Rule of Civil Procedure 4(k)(2). Referred to as the federal long-arm statute, Rule 4(k)(2) applies when (1) the claim against the defendant arises under federal law; (2) the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal

[1] To utilize the authorization for nationwide service under 18 U.S.C. § 1965(b), "the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).

court's exercise of personal jurisdiction comports with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007).

The first two elements are not in dispute: Evans RICO claim arises under federal law, and where (as here) there is no one state court of general jurisdiction which would otherwise have jurisdiction over all defendants, the second element is also satisfied. *Id*. at 462 ("[A]bsent any statement from [the defendant] that it is subject to the courts of general jurisdiction in another state, the second requirement of Rule4(k)(2) is met.").

Personal jurisdiction under RICO extends anywhere in the United States on the basis of a fleeting contact under 18 U.S.C. § 1965(b) without offending due process. Consequently, the substantial contacts Swarthep, HZ Global, and Yuancela had related to the other Defendants (as outlined in the Complaint) likewise does not transgress the limitations imposed by due process and the Court's exercise of personal jurisdiction over those entities.

Additionally, Swarthep, HZ Global, and Yuancela have not "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985). Swarthep, HZ Global, and Yuancela make no argument that they would be less burdened by defending in some other jurisdiction as opposed to this Court. But even if these entities were to make such a claim, "[u]nless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Hirsch v. Blue Cross*, *Blue Shield of Kansas City*, 800 F.2d 1474, 1481 (9th Cir. 1986). This portion of the Motion to Dismiss should be denied.

**C. <u>Evans' RICO Claims against the Swarthout Defendants Are Properly Pled.</u>**

"RICO provides a private cause of action for '[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962].'" *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 770 F.3d 834, 837 (9th Cir. 2014) (quoting 18 U.S.C. § 1964(c)). Subsections 1962(a) through (c) prohibit certain 'pattern[s] of racketeering activity' in relation to an 'enterprise' and Subsection 1964(d) makes it illegal to conspire to violate subsections (a), (b), and (c) of section 1962. *United Bhd. of Carpenters & Joiners of Am.*, 770 F.3d at 837.

RICO claims require adequate pleading of an "enterprise." *United Bhd. of Carpenters & Joiners of Am.*, 770 F.3d at 837. Section 1961(4) provides that a RICO enterprise includes "any *individual*, partnership, corporation, association, or *other legal entity*, and *any union or group of individuals associated in fact* although not a legal entity." 18 U.S.C. § 1961(4) (emphasis added). As the Ninth Circuit Court of Appeals has explained:

> To show the existence of an enterprise under [RICO], plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose. *Boyle v. United States*, 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L.Ed.2d 1265 (2009).

When dealing with an "association-in-fact enterprise," the "enterprise" "does not require any particular organizational structure, separate or otherwise." *Odom*, 486 F.3d at 551. Nevertheless, to allege an "association-in-fact enterprise," the complaint must describe "'a group of persons associated together for a common purpose of engaging in a course of conduct[ ]' . . . [and] must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" *Baker v. Patterson*, No. 4:16-CV-00181-MWB, 2017 U.S. Dist. LEXIS 172748 (D. Idaho Apr. 20, 2017).

Here, we are dealing with an "enterprise" consisting of Hepworth, the Swarthout Defendants and the remaining defendants. Evans contends that she has adequately pled that such an enterprise exists with Hepworth, Swarthout and the myriad of LLC's used by both to further their scheme to defraud Evans.

**1. Evans sufficiently pled a RICO enterprise.**

The Swarthout Defendants knowledge of the RICO enterprise is sufficiently pled in the Complaint. "[I]t is sufficient that the defendant know the general nature of the enterprise and know that the enterprise extends beyond his individual role." *United States v. Eufrasio*, 935 F.2d 553, 577 n.29 (3d Cir. 1991) (citation and internal quotation marks omitted). Likewise, a RICO conspiracy under § 1962(d) requires only that the defendant was "aware of the essential nature and scope of the enterprise and intended to participate in it." *United states v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015). Either way, the definition of a RICO enterprise "has 'wide reach' and is to be liberally construed to effectuate its remedial purposes." *Id.* At 781 (quoting *Boyle*, 556 U.S. at 944-45 (holding that a RICO enterprise does not need to have a formal, business-like structure or hierarchy)).

In the Complaint, Evans alleges that the "common purpose" of the Defendants was to scheme to "defraud Evans and deprive her of her rightful funds, and to obtain money or other assets by means of said scheme or artifice… ." *See Complaint* at ¶ 100. These allegations are supported by the detailed account of the Defendants intertwined relationship and participation in the enterprise. It is undoubted that the Swarthout Defendants were aware of the scheme because Swarthout exercised ownership and control of the LLC's and the transfers of the funds made in the scheme to defraud Evans. In many cases, Swarthout herself caused the transfer of funds – all while knowing the original genesis of the funds was the Redtop Holdings payment, which Evans

was entitled to. Swarthout's self-serving statement that she was unaware of her boyfriend/fiance's previous divorce decree obligations does not withstand scrutiny. Swarthout was with Hepworth for a number of years, and undoubtedly was aware of the requirements of Hepworth's divorce decree which separated his and Evans' assets. Further, Swarthouts's intent to participate in the scheme is readily identified by her willingness to let Hepworth funnel "his" money through the various entities owned and or created by Hepworth and/or Swarthout and ultimately used to carry out the deceptive and fraudulent transfers of funds. Further, the issue of what the Swarthout Defendants knew is an issue of material fact and therefore should be resolved by a fact finder at trial. Evans has sufficiently alleged, and could present evidence which a jury could conclude, that the Swarthout Defendants knew about the essential nature of the enterprise to defraud Evans. Accepting the allegations in the Complaint as true and construing those pleadings in Evans favor, the Complaint adequately alleged an enterprise existed.

**2. Evans sufficiently pled federal RICO violations.**

The Swarthout Defendants claim that the Complaint fails to satisfy the heightened pleading standards of Rule 9(b). For purposes of Evans' action, the "racketeering activity" alleged consists of wire and mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343, respectively. F.R.C.P. 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Schreiber Distrib. Co. v. Serve Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986). "[T]he p[leader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553-554 (9th Cir. 2007). Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity. It provides: "In all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity.

Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "[A] wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Odom*, 486 F.3d at 553-554. While the factual circumstances of the fraud must be alleged with particularity, the state of mind -- or scienter -- of the defendants may be alleged generally. *Id.* (citing *Decker v. GlenFed, Inc.* 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc) ("We conclude that plaintiffs may aver scienter generally, just as the rule states -- that is, simply by saying that scienter existed.").

Examples of claims of RICO violation based on fraud that are examined and found by courts to be adequately pled note that the pleading in question specifies the identities of the originator and recipient of the allegedly false representations. *See, e.g., Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 196 (9th Cir. 1987). Here, this level of detail has been sufficiently alleged in the Complaint – the specific transfers are identified, including the originator and recipient of the transfer.

The Swarthout Defendants base much of their arguments of lack of particularity on a self-serving Declaration from Swarthout which disputes the allegations in the Complaint, and alleges that she had no knowledge of the enterprise or scheme. Of course, such statements and argument are improper in the context of a Motion to Dismiss – all allegations in the Complaint are accepted as true and construed in favor of Evans. Contrary to what is seemingly advocated in the Motion, Rule 9(b) does not raise the pleading standard to the level required to survive a motion for summary judgment or a requirement to prevail at trial, requiring Evans to actually prove all material issues of her case. Instead, Evans need only set forth the particular facts of the fraud, which at this stage must be accepted as true. The allegations set forth in the Complaint wherein Evans states in

particularity the actions taken by Hepworth and the Swarthout Defendants to further the scheme to defraud Evans in direct violation of the federal RICO statute are adequate to satisfy the heightened fraud pleading requirements of Rule 9(b).

**D. Evans Has Standing to Pursue RICO Claims Against the Swarthout Defendants.**

**1. Evans has sufficiently pled injury to her property.**

Congress has narrowed the scope of injuries that can trigger a civil RICO violation, specifically limiting standing to those who have suffered (1) an injury to "business or property," that is (2) "by reason of" a RICO violation. 18 U.S.C. § 1964(c). The Swarthout Defendants contend that Evans has not satisfied either of these requirements. In the first instance, Swarthout argues that "financial loss alone … is insufficient to allege an injury to property." *See Motion*, p. 12, *citing Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008). Swarthout then asserts that, because Evans only damage is financial in nature, she lacks sufficient standing to assert a RICO claim. The Ninth Circuit has previously recognized the financial loss is a requirement for a RICO claim. *See, e.g., Thomas v. Baca*, 308 F.App'x 87 (9th Cir. 2009). Here, based on the divorce decree, Evans was awarded ½ of the Redtop Holdings stock and proceeds thereof. Accordingly, the failure to pay her portion of the proceeds amount was a specific injury to Evans' property interest.

Swarthout next argues that, because Evans has a money judgment against Hepworth related to the amount of proceeds that were to be paid to her, she has nothing more than a monetary loss, unrelated to an injury to a business or property. Again, however, Swarthout ignores the nature of the judgment – it is a monetary judgment against Hepworth for the value of Evans own property that was illegally transferred to the Swarthout Defendants. The entire basis of Evans claims was

the loss of her property interest in the Redtop Holdings proceeds. Evans has sufficiently pled the scope of her injury to her property.

**2. Evans has sufficiently pled that the RICO violations are the proximate cause of her injury.**

The allegations plausibly support that, "but for" the alleged enterprise, Evans would not have suffered the injuries she alleges. Evans injury stems from the Defendants having devised a scheme or artifice to defraud Evans and to obtain money or assets by means of the scheme. But for the Defendants deception and attempts to transfer and hide assets, Evans would not have been injured.

The injuries to Evans property interest in the Redtop Holdings proceeds are a result of the RICO conspiracy and the myriad transfers to hide those assets. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Three non-exhaustive factors are considered as part of this inquiry:

> (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.

*Mendoza*, 301 F.3d at 1169.

Each of these factors supports a direct connection between the Swarthout Defendants' RICO violation and Evans' injuries. First, there are no more direct victims of the wrongful conduct because Evans is the sole owner and beneficiary of the funds fraudulently kept from her by Defendants Hepworth and the Swarthout Defendants. To the extent Evans has been injured by

Hepworth's nonpayment of the funds due her from the divorce, and the lost value and interest in the amount owing (all as a result of the scheme to transfer those assets and make them unavailable to Evans), no one other than Evans can assert those injuries.

As for the second factor, at this stage it is sufficient that the relationship between Evans' injuries and the Swarthout Defendants' violations is not "speculative in the extreme." *Canyon Cty.*, 519 F.3d at 982. Unlike in *Canyon County*, the allegations in the Complaint (i.e., the creation of LLC's combined with the myriad of deposits, withdrawals, and transfers in an attempt to hide and defraud funds rightfully owed to Evans) led directly to Evans inability to receive her awarded share of the proceeds from the sale of the Redtop Holdings shares. And as noted in *Mendoza*, questions as to the amount of damage, as opposed to the plausibility of damage, are best resolved at a later stage in the litigation. *See* 301 F.3d at 1171. In other words, absent the transfer scheme, Evans could have recovered her funds directly from Hepworth's account. However, because of the transfer scheme, those funds became unavailable in Hepworth's account.

Third, there is no reason to currently conclude that this case will require the Court "to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries." *Id.* at 1169. As outlined in the Complaint, the funds and assets transferred can readily be identified, with specific damages against specific defendants easily ascertained. Each of these factors, then, fall in Evans favor and meet the pleading requirements for the RICO scheme being the proximate cause of Evans' injuries.

The Swarthout Defendants incorrectly allege that Defendant Hepworth alone caused injury to Evans when he "deposited the proceeds of the sale of the shares into his individual Keybank account" *Motion* at pg. 14. Hepworth received the funds via wire transfer from Redtop Holdings. Hepworth then began the RICO scheme by transferring the funds into the newly-formed Swarthep,

LLC's bank account. Swarthep is, of course, the entity whose name is derived from the combination of Swarthout and Hepworth, and an entity that both individuals have ownership, power or control over. *See* Complaint at ¶ 30. It was after the funds were initially transferred to Swarthep that the Swarthout Defendants began to fraudulently use, hide, and systematically transfer these funds in an effort to prevent Evans from rightfully receiving her assets. On the other hand, had the Redtop Holdings funds remained in either Hepworth or Swarthep's accounts (rather than being funneled through a scheme of entities), Evans could have easily recovered her portion of the funds without any need for this case.

Consequently, Evans has adequately pled that her injuries were proximately caused by the RICO scheme that the Swarthout Defendants participated in – the Motion to Dismiss on this basis should be denied.

**E. <u>This Court Should Not Abstain from Exercising Jurisdiction In This Case.</u>**

The Swarthout Defendants argue that this Court should abstain from proceeding with this case pursuant to the *Colorado* and *Burford* abstention doctrines, due to a pending state court case (the "Divorce Case") wherein Evans in enforcing her divorce decree against Hepworth. However, the Swarthout Defendants provide no argument or analysis as to why or how the *Colorado* abstention doctrines may apply in this case and therefore this argument should be disregarded. Because the Divorce Case and the RICO Case involve substantially different parties, facts, and legal claims, abstaining from the RICO Case just because the Divorce Case is pending is not appropriate. Evans fully sets forth her arguments against these abstention doctrines in her *Brief in Opposition to Dismissal or Stay of Federal Proceedings* (Docket No.35) and the forthcoming

*Reply Brief in Opposition to Dismissal or Stay of Federal Proceedings,* both of which are specifically incorporated herein.

The Swarthout Defendants do, however, argue that the Burford abstention doctrine dictates that the Court should abstain from exercising jurisdiction under a domestic relations exception.

The Supreme Court discussed *Burford* abstention at length in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992). In that case, a mother acting on behalf of her daughters brought a tort action against the father of her children and the father's girlfriend for child abuse. The Supreme Court examined whether the federal court should abstain from exercising jurisdiction over the case, which was in federal court solely based on diversity jurisdiction. In examining this issue, the Court found that there was a "domestic relations exception" to federal jurisdiction but construed this exception very narrowly. The Court held that "the domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Id*. at 703. However, cases seeking issuance of a decree were distinguished from cases seeking enforcement of a decree. *See id*. at 693-94. The Court explained the rationale behind the exception:

> Issuance of decrees of this type not infrequently involves retention of jurisdiction by the court and deployment of social workers to monitor compliance. As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees. Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees.

*Id*. at 703-04.

The Court also acknowledged that *Burford* abstention "might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody." *Id*. at 705. The Court explained:

> This would be so when a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. Such might well be the case if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties.

*Id*. at 705-06 (citation omitted) (internal quotation marks omitted). Applying that logic to the case before it, the Court declined to abstain because "the status of the domestic relationship has been determined as a matter of state law, and in any event has no bearing on the underlying torts alleged." *Id*. at 706 (footnote omitted).

The Swarthout Defendants argue that *Burford* abstention "might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody," *Ankenbrandt*, 504 U.S. at 705. This broad reading of the domestic relations exception is too expansive and contradicts the Supreme Court's position that abstention should be narrowly construed and infrequently granted. The example given in *Ankenbrandt* of a case involving "difficult questions of state law" is a "suit depend[ing] on a determination of the status of the parties." *Id*. at 706. This indicates that abstention would be appropriate when disposition of the federal case depends on a state court's decision about how state domestic relations law should be interpreted and applied. The instant case, however, does not present such a situation. Like in *Ankenbrandt*, here "the status of the domestic relationship has [already] been determined as a matter of state law," *id*.,—namely, the divorce matter is all but settled and a money judgment has been entered in favor of Evans. There are no pending custody or support issues.

The Swarthout Defendants abstention argument is solely based on the fact that the state-court case is a divorce proceeding. However, the Swarthout Defendants make no argument related to the status of that proceeding (i.e., that the decree, custody and support orders have already been entered), or any argument that state-law issues in that proceeding are necessary to be decided prior to this case proceeding.

Further addressing the Burford abstention doctrines, there is nothing in this case that "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *First Penn-Pacific Life Ins. Co. v. William R. Evans, Chtd.*, 304 F.3d 345, 348 (4th Cir. 2002) (*quoting, ultimately, Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)). As the issues raised by Evans in this federal RICO Case are different claims with different defendants from that of the state court case, no ruling from this Court would affect any proceedings with the state court case which is all but finished. Therefore, the second ground for abstention under *Burford* also fails.

In summary, this case does not present difficult questions of state law, and no ruling from the federal forum would be disruptive of state efforts to establish any policy's with respect to matters of public concern, therefore neither grounds under the *Burford* abstention applies. As this RICO Case is wholly independent and separate from the Divorce Case, this Court should not abstain from exercising its jurisdiction on federal question RICO violations.

**F. <u>Evans has sufficiently pled her state law claims.</u>**

The Swarthout Defendants' concluding argument is that Evans has failed to sufficiently plead her Idaho state-law claims for racketeering, fraudulent transfer and conversion. No real analysis of this argument is made – just a conclusory statement that, like the federal RICO claims, Evans has failed to sufficiently allege these claims. The factual allegations which support the

federal RICO claims are sufficient to support both federal and state racketeering claims, as argued above. Regarding the fraudulent transfer claims, Evans has identified the specific transfers at issue and has sufficiently pled the elements of the fraudulent transfer claims, including allegations supporting actual fraud. In the context of a constructively-fraudulent transfer, Evans has alleged that the Defendants were insolvent at the time of the transfers and did not receive any (or, at the very least, reasonably equivalent) value in return for the transfers. Lastly, the elements of a conversion claim are also sufficiently pled. The Motion to Dismiss Evans' state law claims should be denied.

## III. CONCLUSION

For the above-mentioned reasons, Evans respectfully requests that this Court deny Defendants' Motion to Dismiss.

DATED the 27th day of December, 2019.

/s/
Matthew T. Christensen

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of December, 2019, I filed the foregoing PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SWARTHOUT DEFENDANTS' MOTION TO DISMISS electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Branden M. Huckstep | bmh@angstman.com |
| Brent O. Roche | brent@racineolson.com |
| Kevin Eugene Dinius | kdinius@diniuslaw.com |
| Matthew L. Walters | mlw@elamburke.com |
| Nathan R. Palmer | nathan@racineolson.com |
| Sarah Louise Hallock-Jayne | shallockjayne@diniuslaw.com |
| Thomas John Lloyd , III | tjl@elamburke.com |

Any others as listed on the Court's ECF Notice.

/s/
Matthew T. Christensen